UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF THAI-LAO LIGNITE (THAILAND) CO., LTD. & HONGSA LIGNITE (LAO PDR) CO., LTD. FOR AN ORDER DIRECTING DISCOVERY IN AID OF FOREIGN PROCEEDING FROM ÉLECTRICITÉ DE FRANCE INTERNATIONAL PURSUANT TO 28 U.S.C. § 1782 | Miscellaneous Action No. 11-313 (JDB) |

## MEMORANDUM OPINION

Thai-Lao Lignite (Thailand) Co., Ltd. and Hongsa Lignite (Lao PDR) Co., Ltd. ("Petitioners") have filed an ex parte petition for discovery in aid of a proceeding before a foreign tribunal pursuant to 28 U.S.C. § 1782. For the reasons explained below, the Court will deny the petition.

## BACKGROUND

Petitioners obtained an arbitration award against the Government of the Lao People's Democratic Republic ("Laos") on November 4, 2009. Subsequently, they commenced an exequatur proceeding in the Paris Court of First Instance to confirm the award pursuant to the United National Convention for the Recognition and Enforcement of Foreign Arbitral Awards (June 10, 1958), 21 U.S.T. 2517, 330 U.N.T.S. 38, more commonly known as the "New York Convention." The Paris Court of First Instance granted exequatur in August 2010. See Declaration of Jérôme Barzun ¶ 4 (May 24, 2011)("Barzun Decl."); Ex. A to Barzun Decl.

Once an order of exequatur has been entered confirming an arbitration award, the prevailing party can then initiate measures to freeze the assets of the party against whom

1

enforcement of the award is sought. Am. Pet. ¶ 10. Petitioners claim that Laos has refused to voluntarily pay the award; accordingly, they now seek information from Électricité de France International ("EDFI") concerning any French assets owned or controlled by Laos. Id. ¶¶ 4, 18. Specifically, petitioners assert that EDFI is the principal shareholder, lead contractor, and project operator of Nam Theun 2, a hydroelectric power facility in Laos. Id. ¶¶ 4, 11. They further contend that the revenues generated by Nam Theun 2 -- in which Laos has a property interest -- are located within or pass through French financial institutions and are attachable assets under French law. Id. ¶ 13.[1] In furtherance of their effort to obtain information about Laos' assets, petitioners filed an ex parte petition in this Court on June 1, 2011 for assistance in aid of a foreign proceeding pursuant to 28 U.S.C. § 1782. That original petition named EDFI as respondent, listed an office address of 1300 I Street, NW in Washington, D.C., and sought an order directing EDFI to provide responsive information concerning any French assets owned by or commercial debts owed to Laos. Pet. ¶ 4.

This Court ordered petitioners to serve the ex parte application on EDFI, along with an order for EDFI to show cause as to why the petition should not be granted. However, much confusion has arisen subsequently with respect to the entities (as well as the location of their offices) from which petitioners seek information. After their attempt to serve EDFI with the relevant documents at the listed Washington, D.C. address proved unsuccessful, petitioners sought to amend their petition to reflect 5404 Wisconsin Avenue in Chevy Chase, Maryland, as the proper address for EDFI, and to include an additional allegation that "EDFI has continuous and systematic contacts with this District that are tantamount to EDFI's being 'found' in this

---

[1] Petitioners indicate that the ultimate determination as to whether the assets could be used to satisfy an outstanding exequatur order would be made by a French court in a subsequent proceeding. Am. Pet. ¶ 13.

District pursuant to Section 1782." Mot. to Am. Pet. at ¶¶ 4,6 (June 17, 2011). Although the amended petition continued to name Électricité de France International as the respondent, it was served at the Chevy Chase, Maryland address on an entity that has since identified itself as EDF Inc., a U.S.-based holding company with interests in the energy sector. Opp'n at 3; Declaration of Pauline Crane, Legal Counsel at EDF Inc. ¶ 9 (July 15, 2011) ("Crane Decl."). EDF Inc. responded to this Court's order to show cause claiming that, to its knowledge, EDFI is a non-existent entity, and objecting to the relief requested in the amended petition should the Court construe it as one against EDF Inc. or its parent company.

Adding to the confusion, petitioners also state that "publicly-available documentation shows that EDFI maintains an office at 1730 Rhode Island Avenue NW, in Washington D.C." They attach online directory information listing that address for "Electricite de France Intl". Am. Pet. ¶ 5; Exs. B, C, D & E to Declaration of Charlene Sun (June 20, 2011) ("Sun Decl."). EDF Inc. contends that this address was the location for Électricité de France International North America Inc. ("EDFINA") -- which it describes as a "now-defunct company" that was dissolved in December 2009 and merged into EDF Inc. Crane Decl. ¶ 10. According to EDF Inc., EDFINA became a wholly-owned subsidiary of EDF International. See Opp.'n at 5 n. 2. EDF Inc. asserts that "[n]either EDF International nor EDF Inc. (nor any EDF-related entity) currently occupies 1730 Rhode Island Avenue NW." Id. Moreover, EDF Inc. -- which describes itself as a Delaware-incorporated, Maryland-headquartered holding company, id. at 5 -- formerly had an office at 1300 I Street, N.W. in Washington, D.C. (where petitioners originally sought to serve the petition), but the parties agree that in August 2010, EDF Inc. moved its headquarters to 5404 Wisconsin Avenue in Chevy Chase, Maryland, and that it no longer maintains an office at that Washington, D.C. address. See Crane Decl. ¶ 9; Ex. A to Sun Decl.

Despite these events, petitioners claim that EDF Inc. operates as an "agent or branch office" of its parent companies, EDF International and EDF Group, and that service upon EDF Inc. should "suffice" as service upon EDF International and EDF Group. Reply at 1. They also seek to obtain information from EDF International and EDF Group pursuant to section 1782, on the basis that EDF Inc. acts as the alter ego of its parent companies. Id. at 5. In the alternative, petitioners request leave to amend their petition for a second time to name EDF Inc., the entity served, as the respondent. Id. at 4.

## **DISCUSSION**

Petitioners bring this action pursuant to 28 U.S.C. § 1782(a), which enables district courts to order discovery "for use in a proceeding in a foreign or international tribunal."[2] This statute authorizes a district court to permit discovery when (1) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person. See 28 U.S.C. § 1782(a); In re Caratube Int'l Oil Corp., 730 F. Supp. 2d 101, 104 (D.D.C. 2010); Schmitz v. Bernstein, Liebhard & Lifshitz, LLP, 376 F.3d 79, 83 (2d Cir. 2004).

Even where section 1782's threshold requirements are met, "a district court is not required

---

[2] Section 1782(a) states in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court . . . .

4

to grant a § 1782(a) discovery application simply because it has the authority to do so." Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264 (2004); see also id. at 247 ("§ 1782(a) authorizes, but does not require, a federal district court to provide judicial assistance to foreign or international tribunals . . . ."). Rather, the Supreme Court has identified several factors for courts to consider in evaluating petitions under section 1782. A court could weigh, for example, whether "the person from whom discovery is sought is a participant in the foreign proceeding." Id. at 264. Courts also "may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign . . . court . . . to U.S. federal-court judicial assistance." Id. Additionally, "a district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Id. at 264-65. And "unduly intrusive or burdensome requests may be rejected or trimmed." Id. at 265. In examining these factors, district courts should consider "'the twin aims of [section 1782]: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" Schmitz, 376 F.3d at 84 (quoting In re Metallgesellschaft AG, 121 F.3d 77, 79 (2d Cir. 1997)).

Hence, a court's analysis with respect to petitions pursuant to section 1782 proceeds in two parts. A court first considers whether it has the authority to grant the petition. Once it has decided this question in the affirmative, it proceeds to the second inquiry -- whether to exercise its discretion in granting the petition. See Lazaridis v. Int'l Centre for Missing & Exploited Children, Inc., 760 F. Supp. 2d 109, 112 (D.D.C. 2011) (internal citations omitted).

I.     **The Court's Authority**

    A.     **Resides or is found**

EDF Inc. does not really contest that the second and third factors -- whether the discovery is for use in a proceeding before a foreign tribunal and whether the application is made by a foreign tribunal or any interested person -- weigh in favor of granting the relief requested in the petition. Hence, the Court treats these factors as conceded.[3] Instead, EDF Inc. focuses on the first factor -- whether the person or entity from whom discovery is sought resides or is found in this district, and argues that petitioners have failed to show that this requirement is satisfied.

EDF Inc. argues that EDFI is a non-existent entity and that it must follow that EDFI neither resides in nor is found in the District of Columbia. Petitioners have not responded to these claims. In their amended petition, petitioners assert that EDFI is located at the Chevy Chase, Maryland address, but also point to "publicly-available documentation" suggesting that EDFI also maintained an office at 1730 Rhode Island Avenue NW, in Washington, D.C. Am. Pet. ¶ 5; Exs. B, C, D & E to Sun Decl. However, EDF Inc. has directly refuted plaintiff's claim that any EDF-based entity is located at that address. See Opp'n at 5 n. 2; Crane Decl. ¶ 10 (stating that "[n]either EDF International nor EDF Inc. (nor any EDF-related entity) currently occupies 1730 Rhode Island Avenue NW."). The amended petition asserts only generally that "[u]pon information and belief, EDFI has systematic and continuous contacts with this District that would be sufficient to justify the exercise by this Court of in personam jurisdiction over EDFI," and that such contacts "are tantamount to being 'found'" for section 1782 purposes. Am. Pet. ¶¶ 6-7. But petitioners do not explain what such "systematic and continuous contacts" might be. In any event, such claims of contact with this district have been made only with respect to

---

[3] It is likely that any attachment proceedings in a French court in support of an exequatur order is the type of proceeding within reasonable contemplation as considered by the Supreme Court in Intel, 542 U.S. at 259, and that petitioners, who were the prevailing party in the arbitration, satisfy the term "interested person" as contemplated by section 1782.

EDFI. See In re Nokia Corp., 07-mc-47, 2007 WL 1729664, at * 3 (W.D. Mich. June 13, 2007) (rejecting argument that entity was found in district for purposes of section 1782 because of contacts of its subsidiary). Accordingly, the Court concludes that the petition should be dismissed with respect to Électricité de France International.

EDF Inc. also opposes petitioners' attempt to seek discovery from EDF Inc. and/or its parent company, EDF International, pursuant to section 1782. As an initial matter, EDF Inc. refutes petitioners' claim that, in addition to EDF International, EDF Group is also its parent company. EDF Inc. asserts that "EDF Group" is not a separate entity, but "a shorthand term used to collectively describe all of the related entities within the EDF family of companies." Surreply at 2-3. In addition, both parties agree that EDF Inc. and EDF International are incorporated and headquartered outside the District of Columbia. See Opp'n at 4-5. Despite this, petitioners claim that, "[i]f EDF Inc. is not, in fact, a separate and distinct entity from EDF International and EDF Group, the latter parent entities may each be 'found' in the District through its U.S. agent, EDF Inc." Reply at 7. However, petitioners have not even asserted that EDF Inc. resides or is found in this district, and the record is unclear on this point. Indeed, petitioners concede that EDF Inc. is a Delaware-incorporated company headquartered in Chevy Chase, Maryland, and their own submissions indicate that EDF Inc. moved its headquarters from Washington, D.C. to Maryland in 2010 -- well in advance of filing of the June 2011 petition. See Ex. A to Sun Decl. ("EDF has signed a 10-year lease for 16,000 square feet at 5404 Wisconsin Ave., planning to move 16 employees from its current offices at 1300 Eye St. NW later this year."). Moreover, while EDF Inc. had formerly maintained an office in Washington, D.C., it no longer does so. See Crane Decl. ¶ 9.

Finally, petitioners have not claimed that EDF Inc. has any contacts with the District of

Columbia. Absent any such assertions, the Court is reluctant to infer that a Delaware company headquartered in Maryland has the requisite contacts to be found in or to reside in this district.[4] See In re Godfrey, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) (quashing subpoena by relying on petitioners' failure to provide any authority that a corporation was "found" in a district for section 1782 purposes when it was neither headquartered nor incorporated there); see also In re Inversiones y Gasolinera Petroleos Valenzuela S. de R.L., 08-mc-20378, 2011 WL 181311, at * 7 (S.D. Fla. Jan. 19, 2011) (finding that when a corporation's place of incorporation or headquarters lies outside the district, then the petitioner has the burden of establishing that the corporation "undertakes systematic and continuous local activities in order for the corporation to be found there for the purposes of section 1782"). Accordingly, petitioners have failed to make a sufficient showing that any of the named or intended respondents reside or can be found in this district.

### B. Service of process and alter ego arguments

Without pointing to any allegations that this Court even has jurisdiction over EDF Inc., petitioners nevertheless claim that service on EDF Inc. at its Chevy Chase, Maryland headquarters should be deemed service upon its corporate parents, EDF Group and EDF International. They further urge the Court to construe the petition -- regardless of who is named as respondent -- as one directed towards EDF Inc. (and, by extension, EDF International and EDF

---

[4] Courts considering whether to grant a petition for assistance pursuant to 28 U.S.C. § 1782 have analyzed their authority by referencing the language in section 1782 -- whether it is a district "in which a person resides or is found" -- rather than discussing whether the Court has subject matter and personal jurisdiction over the entity or person from whom discovery is sought. To some extent, courts have considered these inquiries to be the same. See In re Inversiones y Gasolinera Petroleos Valenzuela S. de R.L., 2011 WL 181311, at * 7 . At minimum, they overlap considerably. See In re Nokia Corp., 2007 WL 1729664, at * 3 (analyzing sufficiency of parent company's contacts to the district with respect to section 1782's requirement that the entity or person resides or is found in that district).

Group, under an alter-ego or veil-piercing theory). Reply at 5. Alternatively, petitioners seek leave to amend their petition for a second time to name EDF Inc. as the proper respondent. Id. at 4.

But petitioners' failure to assert any jurisdictional allegations with respect to EDF Inc. is fatal to their argument that this Court should exercise jurisdiction over EDF Inc.'s parent company, much less EDF Inc., particularly given the fact that service was made on EDF Inc. outside of this jurisdiction. See, e.g., Brooks v. Harris, Civ. Action No. 10-1993, --- F. Supp. 2d ----, 2011 WL 3893899, at * 1 (D.D.C. Sept. 6, 2011) (finding no jurisdiction where "[p]laintiff has not shown that these Defendants have had any contacts with this forum whatsoever, much less any contacts that are sufficiently systematic and continuous"); Stoddard v. Carlin, --- F. Supp. 2d ----, Civ. Action No. 10-201, 2011 WL 3240679, at *4 (D.D.C. July 29, 2011) (finding no jurisdiction over Maryland resident who had been served in Maryland, when no contacts with the District of Columbia were alleged); Roz Trading Ltd. v. Zeromax Grp, Inc., 517 F. Supp. 2d 377, 385-86 & n.4 (D.D.C. 2007) (finding no jurisdiction over corporation that had relocated to and received service of process in Maryland, where plaintiffs insufficiently alleged that the corporation had contacts with the District of Columbia). Hence, the Court need not (and indeed, should not) address whether service of process on EDF Inc. outside this jurisdiction should also be deemed service of process upon other EDF entities.

Likewise, even if petitioners had demonstrated that this Court properly had jurisdiction over EDF Inc., their argument that EDF Inc. was the alter ego for its parent companies with respect to the section 1782 application must fail. There appears to be no caselaw within this jurisdiction addressing the specific issue whether a request directed to one company pursuant to section 1782 could then be construed as having been made against other companies under an

alter ego theory. However, cases in other jurisdictions, as well as this jurisdiction's treatment of alter ego allegations more generally, are informative. In order to establish that a subsidiary company is the alter ego of a parent company, courts in this jurisdiction have considered factors such as "whether parent and subsidiary have common business departments; whether the parent finances the subsidiary; whether the parent incorporated the subsidiary; whether the subsidiary is inadequately capitalized; whether parent and subsidiary file consolidated financial statements and tax returns; whether they have a joint accounting and payroll system; whether the subsidiary is operated as a mere division of the parent; whether the subsidiary depends on the parent for substantially all of its business; whether the subsidiary's obligations are assumed to be those of the parent; whether the subsidiary's property is used by the parent as its own; and whether the subsidiary is operated exclusively in the interest of the parent." See Oceanic Exploration Co. v. ConocoPhillips, Inc., No. 04-332, 2006 WL 2711527, at * 12 (D.D.C. Sept. 21, 2006) (citing Material Supply Int'l v. Sunmatch Indus. Co., 62 F. Supp. 2d 13, 20 (D.D.C. 1999).

Here, petitioners do not specifically address these factors, but they highlight EDF Group's 2010 Reference Document as evidence that EDF Inc. acts as a mere agent or department of its parent company. See generally Ex. D to Reply. Specifically, petitioners point to the language in the Reference Document relating to "cash pooling agreements," see Reply at 6; Ex. D to Reply at 152, in which the Reference Document states that "[t]he cash pooling set up by EDF centralizes all the cash positions of the subsidiaries and the Group's liquidity can be optimized." Petitioners also cite to language in EDF Group's 2010 financial report to indicate that assets stated as being owned by EDF Inc. -- a 100% ownership in Unistar Nuclear Energy LLC, and a 49.99% stake in Constellation Energy Nuclear Group LLC -- are actually owned by EDF Group. Reply at 7.

EDF Inc. has already explained that "EDF Group" is a shorthand term referring

10

collectively to the EDF "family" of companies. Surreply at 2-3. EDF Inc. maintains that it is a separate and distinct entity from EDF International, see Crane Decl. ¶¶ 4,6, and has directly rebutted petitioners' sole contention that EDF Inc. participates in a cash pooling arrangement with other EDF companies. See Decl. of Patrick Blandin ¶ 3 (Aug. 31, 2011) ("EDF Inc. does not participate in cash pooling arrangements with any of its corporate affiliates, parents, or subsidiaries. Specifically, EDF Inc. does not participate in the 'cash pooling' agreements described generally on page 152 of the 2010 Reference Document."). Moreover, as EDF Inc. points out, the Reference Document itself states that the cash pooling arrangement described "includes *certain* French and international subsidiaries" (emphasis added) -- a group in which EDF Inc. has now indicated it is not included. Surreply at 3; Ex. D to Reply at 152.

In light of these refuted contentions, petitioners' failure to provide additional facts in support of their alter ego theory, and the record before it, the Court rejects petitioners' assertion that "EDF International and EDF Group . . . may each be 'found' in the District' through . . . EDF Inc.," Reply at 7, and concludes that petitioners have not demonstrated that EDF Inc. acts as an alter ego of EDF International and EDF Group. Accordingly, it does not appear that the Court would even have the authority to consider the relief requested by petitioners. On that basis, the petition should be denied and dismissed.

**II. Discretion**

Even assuming that petitioners could have satisfied the threshold requirements of section 1782, the Court would still conclude, in its discretion, that the petition should be denied. "[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." Intel, 542 U.S. at 264. In deciding whether to grant a petition seeking discovery pursuant to section 1782, the Court is mindful of "'the twin aims of [section 1782]:

11

providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" Schmitz, 376 F.3d at 84 (quoting In re Metallgesellschaft AG, 121 F.3d at 79). It is also guided by the Supreme Court's decision in Intel, 542 U.S. at 264-65, and considers such factors as whether "the person from whom discovery is sought is a participant in the foreign proceeding. . . the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign . . . court . . . to U.S. federal-court judicial assistance." Id. at 264-65. Additionally, "a district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Id.. And "unduly intrusive or burdensome requests may be rejected or trimmed." Id. at 265.

Neither EDF Inc. nor any of the EDF-related entities were participants in the foreign proceedings. Ordinarily, this factor would weigh in favor of granting the petition because conceivably, the foreign tribunal could have ordered the participating party to produce the evidence. See Intel, 542 U.S. at 264. This may be true with respect to EDF Inc., but EDF International is a French entity and presumably subject to the jurisdiction of the French courts. This cuts against the general concern underlying an inquiry into whether the person from whom information is sought was a participant in the proceedings abroad. In considering the other factors, the Court finds that these factors, on balance, weigh against granting the petition.

Although there appears to be no indication that petitioners are trying to circumvent foreign proof-gathering restrictions by applying for, and being barred from similar assistance in France,[5] they also do not dispute that most, if not all, of the relevant documents lie outside this

---

[5] Petitioners do note, however, that French law does not have the same type of judicial mechanisms by which to undercover information about assets as U.S. law does. Am Pet. ¶ 14.

jurisdiction and indeed outside this country. Petitioners instead argue that section 1782 "does not bar" discovery of such extraterritorial documents. See Reply at 7-8. Neither the Supreme Court nor the D.C. Circuit have conclusively answered the question whether there is a per se bar to the discovery of documents outside of the United States. See In re Veiga, 746 F. Supp. 2d 8, 25 (D.D.C. 2010) (describing cases holding both ways); In re Nokia Corp., 2007 WL 1729664, at * 5 n.4 (collecting cases and observing that "there is some question regarding whether a court may order production of documents maintained outside of the United States"). Instead, a court may nevertheless consider the geographical location of information in determining whether the exercise of its discretion is warranted. In re Veiga, 746 F. Supp. 2d at 25; In re Nokia Corp., 2007 WL 1729664, at * 5 n.4 ("Because the Court considers the location of the documents as a factor in . . . whether to exercise its discretion, it need not determine whether § 1782 authorizes discovery of documents outside of the United States."). Similarly here, the Court need not conclusively address whether such a bar exists, but does find that the location of the information militates against granting the petition. EDF International is a French company headquartered in France, and petitioners seek information about French assets in order to satisfy what is essentially a French judgment confirming an arbitral award. Requiring EDF Inc. to produce this information would be unduly burdensome and inefficient.

In their reply, petitioners suggest that Corrine Delaye, EDF Inc.'s Vice President of Finance and Treasurer, may possess some relevant information because of her former position "in charge of financing" independent power projects in Laos when she worked at EDF's parent company from 2003 to 2005. Delaye works at EDF Inc.'s Chevy Chase, Maryland office. Reply at 3-4. Petitioners also contend that in her capacity as an officer of EDF Inc., Delaye appears to be an appropriate 30(b)(6) witness and custodian of documents. Id. However, the attached

proposed subpoena indicates that the documents petitioners are requesting "apply to activities undertaken at any time between January 1, 2009 to the present." Id.; Ex. A to Reply. Moreover, petitioners have not shown how Delaye, rather than another EDF Inc. officer, would likely be an appropriate witness pursuant to Federal Rule of Civil Procedure 30(b)(6) during the relevant time requested. More importantly, petitioners have not even shown that EDF Inc. is found in this district, or that EDF Inc. is the alter ego of its French-based parent company EDF International (or any other EDF-entity), in order to infer that any of the documents petitioners seek from EDF International about French assets would reasonably be in EDF Inc.'s control or possession here in the United States.

Hence, even assuming that it has the authority to grant the relief requested, and after weighing the factors discussed by the Supreme Court in Intel, the Court chooses not to exercise its discretion to grant the relief requested. It would be a less efficient means of assistance to participants in any French proceeding (not to mention, of questionable prudence) for this Court to direct a French entity, through its U.S.-based subsidiary, to produce France-based documents or information about French assets to a French court in petitioners' attempt to satisfy a French judgment. Similarly, it is unlikely that this Court's granting of the petition would further the objective of encouraging foreign countries to provide similar means of assistance to U.S. courts.

Moreover, petitioners have provided no basis, either in their amended petition or in their subsequent filings, for amending this petition for a second time to name EDF Inc. as the respondent. Petitioners have failed to make even a minimal showing that EDF Inc. resides in or is found in this district. In any event, such amendment to the petition would be unavailing, because the Court has already decided not to exercise its discretion to grant the relief requested. Hence, petitioners' request to amend the petition to name EDF Inc. is denied. Accordingly, the

Court will dismiss the petition in its entirety.

## **CONCLUSION**

For the reasons discussed above, the petition for assistance in aid of discovery pursuant to section 1782 will be **DISMISSED**. A separate order will issue.

/s/
JOHN D. BATES
United States District Judge

Date: October 31, 2011